IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

DUSTIN ELSWICK, individually,

    Plaintiff,

vs.                                        Civil Action No. :3:21-cv-00468
                                              Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

    Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT PUTNAM
COUNTY COMMISSION'S MOTION TO DISMISS**

Now comes the Plaintiff, Dustin Elswick, by and through counsel, John H. Bryan, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and moves the Court to deny the Putnam County Commission's motion to dismiss. In support hereof, the Plaintiff states as follows:

INTRODUCTION

This case arises from actions taken by a now-defunct drug task force established and operated by the Defendant Putnam County Commission ("PCC"), wherein the Plaintiff suffered Fourth Amendment violations as a result of a warrantless entry into Plaintiff's Putnam County residence, which was captured on hidden interior surveillance cameras. Plaintiff asserted direct Section 1983 claims against the individual officers, as well as a Monell Claim against Defendant

1

Putnam County Commission. Plaintiff also asserted a direct supervisory liability claim under Section 1983 against the John Doe supervisor of the defendant police officer members of the Special Enforcement Unit ("SEU").

FACTS ALLEGED IN THE COMPLAINT

On August 21, 2019, the defendant Putnam County Sheriff's Department police officers, Hall, Rahmati, Lowther, and Lockhart, together comprising the SEU drug task force unit, entered the Plaintiff's property under the auspices of serving a civil summons on the Plaintiff pertaining to a civil dispute which had been filed in the Magistrate Court of Putnam County. Complaint ¶¶ 8-10. However, they weren't actually tasked with civil process service duties, but rather were there acting as the SEU, apparently under the misconception that there would be illegal drugs inside the Plaintiff's home. Without a warrant, and without probable cause, the officers entered the Plaintiff's residence and performed a search therein. No drugs were found inside the unoccupied home. Id.

The defendant officers disabled and destroyed an exterior surveillance camera on the home that would have captured their presence on the property. They were unaware of one surveillance camera, which did record some footage of them on the property. They were also unaware of hidden cameras inside the home which recorded their presence and search activity inside the house. Id. ¶ 15. To access the home, the officers pushed a window mounted air conditioner unit through the window and into the interior of the residence. The officers then climbed into the residence through the window. Id. ¶ 11.

Once inside Plaintiff's house, the defendant officers performed their search, much of which was recorded on video. They can be observed on the video searching with flashlights,

2

looking through the Plaintiff's clothing, dresser drawers, bed sheets, a chest, and otherwise leaving the room in disarray following their search. Id. ¶ 12. Outrageously, during their illegal search, the defendant officers can be observed handling the cremated remains of a friend of the Plaintiff, which they subsequently field-tested for narcotics, ultimately leaving the remains downstairs for the Plaintiff to later find, along with the used field test kits, inside which included human remains, discarded on the ground outside the home. Id. ¶ 13. The officers also removed the Plaintiff's firearms out of storage, photographed them, arranged them for display purposes, and photographed them inside Plaintiff's home. The firearms were left on display for Plaintiff to find upon returning home. Id. ¶ 14.

After police cruisers were observed at the residence by an acquaintance, Plaintiff called his mother, who arrived at the residence with a friend. Upon exiting the vehicle, she was stopped and detained by the defendant officers, preventing her from reaching the house. Id. ¶¶ 16-19. The officers claimed they were looking for the Plaintiff to serve civil service paperwork on him. She called Plaintiff on the phone and handed the phone to Defendant Hall, who told Plaintiff that the civil process would be left with Plaintiff's mother. There was no mention about a search of his home, nor about suspicion of use or possession of illegal drugs. Id. ¶ 22. Upon later returning home, Plaintiff found his house ransacked, his firearms on display, as well as his friend's remains out-of-place, including inside the drug test kits discarded in the yard. He then accessed his interior surveillance footage and observed that the officers had been inside his home searching. Id. ¶¶ 25-27.

After accessing the footage showing the officers illegally searching his home, Plaintiff's counsel served a FOIA request on Defendant PCC, the response of which revealed that the PCC

was in possession of no documentation evidencing a justified explanation for the officers having entered and searched Plaintiff's home. There was no search warrant, no police report, and no documentation that the officers had ever been on the property. Id. ¶ 27. After making the video footage public, Plaintiff discovered that the same group of police officers, acting as the SEU, had victimized other individuals in a similar manner, including the Johnson family, who are plaintiffs in the now-pending case against the defendants, in civil action no. 3:21-cv-00242, as well as Mason Dillon, who is a plaintiff in the now-pending case against the defendants, in civil action no. 3:21-cv-00435. Id. ¶ 28.

The constitutional violations committed against the Plaintiff by the SEU were part of a systematic and organized effort of drug investigation and enforcement, established by the Putnam County Commission, by and through the Putnam County Sheriff's Office, including the individual defendant sheriff's deputies, which was unorthodox by design. It sacrificed constitutional safeguards for pure results-oriented practices:

> *29.     Upon information and belief, the SEU would obtain tips about individuals who may be in possession of marijuana, or who may be selling marijuana. They would then make warrantless entry into the residence of the suspected individual in possession of marijuana, or other suspected illegal drugs. Upon finding the marijuana that was the subject of the tip, the SEU would then threaten and pressure the suspect to give them another tip, or to identify another individual who was in possession of marijuana, in exchange for not being arrested or charged. The SEU members would then leave, taking the marijuana they seized, along with any cash money or firearms they located in their illegal search and seizure. The SEU would then repeat the process at the new target residence. They would leave no paper trail, such as police reports, warrant applications, charging documents, search and seizure inventory, etc. The seized marijuana, cash money, and even firearms seized, would thereafter disappear into the possession of the SEU members without ever being properly documented.*

Complaint at ¶ 29. By design, the SEU violated constitutional rights and therefore purposefully did so in the absence of legal process or documentary paperwork. By design and implementation

by the PCC, the SEU engaged in a pattern and practice of performing warrantless searches and seizures, under the auspices of fighting against illegal drug use and crime. They wore no law enforcement uniforms and generally gave the appearance that they were acting outside of the law, with no documentation, no warrants, and no paperwork in most cases. They used intimidation and a perceived lawlessness to more effectively and efficiently acquire information and sources. However, they were acting under color of law and with the approval of their supervisors and the PCC. *See* Complaint at ¶ 41.

The defendant police officers, who were individual members of the SEU, acted in accordance and furtherance of that design and implementation when they violated the constitutional rights of the Plaintiff on August 21, 2019. They made warrantless entry into the Plaintiff's home, without uniforms, without a warrant, without probable cause, and without any applicable exception to the warrant requirement, while leaving no paper trail documenting their actions. Like other victims of the SEU, the Plaintiff was not charged with any criminal violation.

ARGUMENT

**A. Monell Claim against the PCC**

Defendant argues that the allegations in the Complaint are insufficient to establish a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). This is the only count in the Complaint asserted against Defendant PCC. There is a separate count asserted against a John Doe supervisor pursuant to the doctrine of supervisory liability, as set forth in Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); *see also* Cilman v. Reeves, 452 F. App'x 263 (4th Cir. 2011) (setting forth the elements for supervisory liability).

This Court has already noted the following applicable law pertaining to Monell Claims in the Fourth Circuit: As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. Id. at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (*quoting* Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). The Fourth Circuit has noted that "[a]lthough prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens v. Baltimore Attorney's Office, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Id.

On the date of this response, the Court entered a memorandum opinion and order denying a substantially identical motion to dismiss filed by Defendant PCC in the Johnson companion case, civil action 3:21-cv-00242. In the November 5, 2021 order, this Court found the same arguments be insufficient:

6

Plaintiffs' allegations plausibly state a claim for relief. In Owens, the Fourth Circuit allowed a claim to survive a motion to dismiss when Plaintiff alleged that "'reported and unreported cases from the period of time before and during the events complained of' establish that the BCPD [Baltimore City Police Department] had a custom, policy or practice of knowingly and repeatedly suppressing exculpatory evidence." Id. Further, the plaintiff alleged that "'a number of motions were filed and granted during this time period that demonstrate. . . the custom, policy, or practice. . . by condoning it and/or knowingly turning a blind eye to it.'" Id. The Court found that the assertions as to "reported and unreported cases" and "numerous successful motions" were factual allegations, the veracity of which could plausibly support a Monell claim, and which would buttress Plaintiff's legal conclusions. The Owens court also relied on a First Circuit decision concluding that allegations of a "'volume of cases'" involving similar constitutional violations to those alleged by the plaintiff contained sufficient factual matter to support a Monell claim, even if "the complaint was couched in general terms" and the "cases" comprising the "volume" were not otherwise identified. Id. at 403-04 (brackets omitted) (*quoting* Haley v. City of Bos., 657 F.3d 39, 53 (1st Cir. 2011)).

Plaintiffs allege that "[t]he SEU engaged in a pattern and practice of warrantless searches and seizures...." and that the SEU "ha[s] also committed other similar civil rights violations against other victims in Putnam County, including the incident captured on video... in August of 2019." Compl. ¶¶ 51, 53. This allegation, like the one in Owens, alleges separate instances that may buttress Plaintiffs' legal conclusion, even if they occurred after this specific incident. *See also* Daniels v. City of South Charleston, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021) (finding that the court was constrained by Owens to conclude that the plaintiff's complaint stated sufficient factual detail to support his allegations when he claimed that unconstitutional excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past five years.") (internal citations omitted); Lane v. Fayette Cnty. Comm'n, No. 2:18-CV-01223, 2019 WL 4780815, at *3 (S.D.W. Va. Sept. 30, 2019) (granting a motion to dismiss where plaintiff did not allege "any instances of such misconduct other than the instant case."); Quigley v. City of Huntington, No. 3:17-CV-01906, 2017 WL 9533233, at *9 (S.D.W. Va. Sept. 22, 2017) (finding sufficient allegations to withstand a motion to dismiss where "[p]laintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed against the Huntington Police Department suggested the City's knowledge and indifference.") report and recommendation adopted sub nom by 2017 WL 4998647 (S.D.W. Va. Nov. 2, 2017). The Complaint's other allegations include that PCC purposely established and operated the the SEU and knew of and condoned the SEU officers repeated constitutional violations. Id. ¶ 51. This alleges that the PCC was the "moving force" behind the constitutional violations where it deliberately created a unit of officers who did not comply with procedural safeguards and engaged in constitutional violations. *See* Bd. of Ctny. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (*quoting* Monell, 436 U.S. at 694).

7

November 5, 2021 Mem. Op. and Order at 5-7. Plaintiff asserts that Defendant PCC's motion to dismiss must also be denied in this civil action for the same reasons.

Defendant PCC's arguments are more properly addressed at the summary judgment stage, where the PCC can address and perhaps clarify their intentions and the actual policies behind the establishment, implementation and supervision of the SEU, as was documented in the television media when they were created in 2016 - roughly three years prior to the violations perpetrated against the Plaintiff.[1]

## CONCLUSION

The Complaint alleges that the PCC established a unit of police officers who as a matter of policy and practice engage in warrantless searches and seizures, in violation of the Fourth Amendment. The very idea that the PCC created the unit and allowed the unit to operate in such a manner is exactly the type of scenario where Monell liability is applicable.

WHEREFORE, the plaintiffs respectfully request that the defendant's motion to dismiss be denied, and for such other and further relief as the Court deems just and fit.

                                                  DUSTIN ELSWICK,
                                                  By Counsel

---

[1] *See generally,* https://wchstv.com/news/local/putnam-countys-special-enforcement-unit-makes-hundreds-of-arrests-in-first-year

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

DUSTIN ELSWICK, individually,

       Plaintiff,

vs.                                     Civil Action No. :3:21-cv-00468
                                          Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

       Defendants.

## **CERTIFICATE OF SERVICE**

       I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFFS' RESPONSE TO DEFENDANT PUTNAM COUNTY COMMISSION'S

MOTION TO DISMISS has been served upon counsel of record by using the CM/ECF System,

this the 5th day of November, 2021 and addressed as follows:

Lori D. Counts-Smith, Esq.<br>
LEWIS GLASSER PLLC<br>
PO Box 1746<br>
Charleston, WV 25326<br>
Counsel for Scott Lowther, Brian Hall<br>
Brian Lockhart and Xerxes Rahmati

Charles R. Bailey, Esq.
Jeffrey M. Carder, Esq.
Bailey & Wyant, PLLC
PO Box 3710
Charleston, WV 25337
Counsel for Putnam County Commission

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com