IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DUSTIN ELSWICK, individually,

        Plaintiff,

v.                                      CIVIL ACTION NO.   3:21-0468

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West Virginia,
JOHN DOE, an individual,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Putnam County Commission's ("PCC") Motion to Dismiss. ECF No. 5. For the reasons stated herein, the Court **DENIES** the Motion.

**I. FACTUAL BACKGROUND**

The named Defendants, Officers Brian D. Hall, Xerxes Rahmati, Scott A. Lowther, and Brian Lockhart (collectively "officers") allegedly entered Plaintiff Dustin Elswick's property without a warrant or probable cause and began an unlawful search of the residence. *See e.g.*, Compl., ECF No. 1. The Complaint alleges that defendant police officers were part of the Putnam County Sherriff's Office's Special Enforcement Unit ("SEU"). *Id.* ¶ 10. The SEU would obtain tips about individuals who may have been in possession of marijuana or may have been selling marijuana. *Id.* ¶ 29. The SEU would then make warrantless entry into the residence of the suspected individual, and, upon finding the marijuana that was the subject of the tip, threaten and

pressure the suspect to give them another tip, in exchange for not being arrested or charged. *Id.* The SEU members would then leave, taking the marijuana they seized, along with any cash or firearms found during the illegal search and seizure. *Id*. Allegedly, the SEU committed similar behavior on many occasions. *Id*. The officers would not leave any "paper trail" such as police reports, warrant applications, charging documents, or search and seizure inventories. *Id.* They would take into their personal possession any seized marijuana, cash, and firearms, without properly documenting their acquisition. *Id.*

On August 21, 2019, the SEU entered Plaintiff's property under the auspices of serving a civil summons on the Plaintiff related to a civil dispute filed in the Magistrate Court of Putnam County. *Id*. ¶ 10. However, none of the officers were tasked with civil service duties for the Sheriff's Department, but instead acted as the SEU. *Id.* The officers illegally entered by removing an air conditioner from a window and climbing through the window into the home. *Id.* ¶ 11. Unbeknownst to the officers, they were being recorded by Plaintiff's hidden interior security cameras beginning at approximately 11:17 A.M. *Id*. ¶ 12. They then illegally searched the home, looking through his clothing, drawers, and other belongings. *Id.*

The officers found cremated remains of Elswick's friend and took them outside the house and field-tested them for narcotics. Id. ¶ 13. The officers left the remains on a shelf downstairs and discarded the two drug field test kits, containing human bone fragments, on the ground outside Plaintiff's home. *Id*. They also removed Elswick's lawfully owned firearms from storage and photographed them, leaving them out of their cases and on display. *Id.* ¶ 14. While on the property, officers disabled and destroyed an exterior surveillance camera that would have captured their presence. *Id.* ¶ 15. However, they missed one camera, which captured their arrival and departure in

unmarked police cruisers and the fact that Defendant Lowther stood guard outside the house while wearing a tactical vest marked "SHERIFF." *Id.*

An acquaintance drove past Plaintiff's residence and called Plaintiff upon noticing the police cruisers. *Id*. ¶ 16. Plaintiff then called his mother, who drove to Plaintiff's residence with her friend. *Id*. ¶ 17. She found the driveway gate open, and upon exiting her vehicle, she was confronted by police officers who prevented her from approaching the home. *Id.* ¶¶ 18-19. The officers asked Plaintiff's mother for her identity and purpose; they then detained her and her friend for 30 to 40 minutes (until they were done searching) to run her criminal history and vehicle tags through dispatch. *Id*. ¶¶ 20-21. The officers told Plaintiff's mother they were there to serve civil process paperwork on Plaintiff and instructed her to call Plaintiff. *Id*. ¶ 22 Plaintiff spoke with Defendant Hall, who informed him that the civil process paperwork would be given to his mother but did not mention the fact that they were searching Plaintiff's residence. *Id*. The officers kept Plaintiff's mother at a distance and prevented her from observing the home during the search. *Id.* ¶ 23. The officers did not say anything to Plaintiff or his mother about having a search warrant. *Id*. ¶ 24. When Plaintiff returned home after the officers left, it was apparent that his home had been entered, as it was left in disarray and appeared to be ransacked. *Id.* ¶¶ 25-26. He also reviewed his interior surveillance camera, revealing the search. *Id.* ¶ 27.

When Plaintiff's counsel filed a Freedom of Information Act ("FOIA") request, the Putnam County Sheriff's Office stated that it did not possess any documentation of the search itself or an explanation for it, such as a warrant or police report. *Id.* 27. Plaintiff made the video public and discovered that other individuals had been similarly victimized (who are also now plaintiffs in civil suits against Defendants.) *Id*. ¶ 28. Plaintiff filed this action, alleging one count of unreasonable search and seizure against the individual defendant officers; a *Monell* claim against

the Putnam County Commission ("PCC"); and a count against John Doe as supervisor of the SEU. PCC has moved to dismiss the Complaint against it.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id*. at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). The Fourth Circuit has noted that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.*

Defendant PCC maintains that Plaintiff has failed to present a policy and/or practice and custom theory and alleges nothing more than a respondeat superior claim. Def.'s Mem. in Support at 15-16, ECF No. 6. Plaintiff "fails to adequately plead existence of an official policy or unofficial custom that resulted in a violation of his constitutional rights." Def.'s Mem. at 7. Defendant also notes that Plaintiff alleges only two other similar incidents involving SEU officers, which occurred around the same time as the events herein, and therefore, county officials had no knowledge of earlier instances involving similar violative conduct. *Id*. at 14-16. PCC contends that the isolated

instances would not reach the "widespread and permanent" practice necessary to establish liability. *Id*. Plaintiff responds that, in the companion cases before this Court, with substantially similar allegations, this Court has found such allegations sufficient. Pl.'s Resp. at 6-7, ECF No. 9

Again, Plaintiff's allegations plausibly state a claim for relief. In *Owens*, the Fourth Circuit allowed a claim to survive a motion to dismiss when Plaintiff alleged that "'reported and unreported cases from the period of time before and during the events complained of' establish that the BCPD [Baltimore City Police Department] had a custom, policy or practice of knowingly and repeatedly suppressing exculpatory evidence." *Owens*, 767 F.3d at 403. Further, the plaintiff alleged that "'a number of motions were filed and granted during this time period that demonstrate. . . the custom, policy, or practice. . . by condoning it and/or knowingly turning a blind eye to it.'" *Id*. The Court found that the assertions as to "reported and unreported cases" and "numerous successful motions" were factual allegations, the veracity of which could plausibly support a *Monell* claim, and which would buttress plaintiff's legal conclusions. The *Owens* court also relied on a First Circuit decision concluding that allegations of a "'volume of cases'" involving similar constitutional violations to those alleged by the plaintiff contained sufficient factual matter to support a *Monell* claim, even if "the complaint was couched in general terms" and the "cases" comprising the "volume" were not otherwise identified. *Id*. at 403-04 (brackets omitted) (quoting *Haley v. City of Bos*., 657 F.3d 39, 53 (1st Cir. 2011)).

Plaintiff alleges that "[t]he SEU engaged and [sic] a pattern and practice of warrantless searches and seizures…." and that the SEU "ha[s] also committed other similar civil rights violations against other victims in Putnam County, Virginia, including civil action nos. 3:21-cv-00242 and 3:21-cv-00435… both having occurred prior to the search of the Plaintiff's home."

Compl. ¶¶ 41, 43. These allegations, like the one in *Owens*, allege separate instances that may buttress Plaintiff's legal conclusion. *See also Daniels v. City of South Charleston*, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021) (finding that the court was constrained by *Owens* to conclude that the plaintiff's complaint stated sufficient factual detail to support his allegations when he claimed that unconstitutional excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past five years.") (internal citations omitted); *Lane v. Fayette Cnty. Comm'n*, No. 2:18-CV-01223, 2019 WL 4780815, at *3 (S.D.W. Va. Sept. 30, 2019) (granting a motion to dismiss where plaintiff did not allege "any instances of such misconduct other than the instant case."); *Quigley v. City of Huntington*, No. 3:17-CV-01906, 2017 WL 9533233, at *9 (S.D.W. Va. Sept. 22, 2017) (finding sufficient allegations to withstand a motion to dismiss where "[p]laintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed against the Huntington Police Department suggested the City's knowledge and indifference.") *report and recommendation adopted sub nom by* 2017 WL 4998647 (S.D.W. Va. Nov. 2, 2017).

The Complaint's other allegations include that PCC purposely established and operated the SEU and knew of and condoned the SEU officers repeated constitutional violations. *Id*. ¶¶ 41, 44. This sufficiently alleges that the PCC was the "moving force" behind the constitutional violations where it deliberately created a unit of officers who did not comply with procedural safeguards and engaged in constitutional violations. *See Bd. of Ctny. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (quoting *Monell*, 436 U.S. at 694).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 5) is **DENIED**.

-8-

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 10, 2021

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE