## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

DUSTIN ELSWICK, individually,

       Plaintiff,

vs.                                Civil Action No. :3:21-cv-00468
                                     Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

       Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT
## OFFICERS' MOTION FOR PROTECTIVE ORDER

Now comes the Plaintiff, Dustin Elswick, by and through counsel, John H. Bryan,

pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, and moves the Court to deny the

Putnam County Commission's motion for a protective order. In support hereof, the Plaintiff

states as follows:

       1.      Videotaped depositions of defendants Hall, Rahmati and Lowther were scheduled

by the mutual agreement of counsel and duly noticed for September 20, 2022. Defendant

Lowther refused to appear. Defendants Hall and Rahmati did appear and their depositions were

held.

       2.      The testimony provided by Defendants Hall and Rahmati demonstrate the true

purpose of their motion for a protective order, in that both individuals, still currently serving as

police officers employed by the Putnam County Sheriff's Department, refused to answer

questions about the subject matter of this litigation by pleading the Fifth Amendment. Both

Defendants Hall and Rahmati pled the Fifth numerous times. Defendant Lowther refused even to

appear to even plead the Fifth under oath.[1]

       3.     The original YouTube video showing the defendant officers inside the Plaintiff's

home was actually the unintentional origin of Plaintiff's counsel's YouTube channel. Originally,

the surveillance footage was provided to federal prosecutors, who in turn provided it to an FBI

agent in the Southern District of West Virginia to investigate. Instead of investigating the

defendant officers, the said FBI agent leaked the existence of the video, as well as the substance

of the video, to several or all of the defendant officers, unbeknownst to Plaintiff's counsel at the

time. Specifically, according to the PCSD's internal investigation report and statements provided

in discovery, the FBI agent referred to Plaintiff's counsel as a "jack-leg lawyer," and otherwise

told the officer(s) essentially that he wasn't going to seriously investigate them, nor take any

legitimate action against them.

       4.     As this was happening, Plaintiff's counsel was requesting updates from the U.S.

Attorney's Office, so as not to interfere with the DOJ investigation by proceeding with the

issuance of a FOIA request, or proceeding with further investigation or litigation. However, for

reasons that are now apparent, it became evident that little, if anything, was being accomplished

by the DOJ, other than delay. Thus, Plaintiff decided to make the video public.

       5.     It was determined that the best way to disseminate the footage as quickly as

possible was through publishing it to Youtube. Therefore, on January 15, 2020, the footage was

---

[1] Plaintiff's counsel was advised upon arrival at the depositions in Charleston that Defendant Lowther
would not be appearing, acting on the advice of his retained criminal defense attorney.

uploaded and released to the public on Youtube. Plaintiff was concerned that the defendant

officers may attempt to conceal or destroy evidence, if the video's existence were known to the

officers prior to the public learning of the same. Moreover, the officers were still active and in

operation as the Special Enforcement Unit prior to release of the video. Thus, Plaintiff was afraid

of retaliation if the video did not go sufficiently viral quickly enough.



6.      Fortunately, almost immediately video went viral, mostly in West Virginia, and

very quickly resulted in a public announcement from the Putnam County Sheriff that he had

ordered an investigation into the officers shown in the footage. Sheriff Steve DeWeese ordered

two detectives within the department to conduct a thorough internal investigation. Plaintiff and

Plaintiff's counsel participated in the investigation and provided evidence to investigators, as

well as a statement from Plaintiff, as well as his mother. However, neither Plaintiff, nor any

member of the public, would ever learn the results of that investigation - at least not until the

confidential-marked investigation report and record was provided in discovery in this civil

action.



7.      The Defendant officers claim that they fear for their safety due to the disclosure of

their identities. The January 15, 2020 YouTube video was not the first time however, that the

Special Enforcement Unit ("SEU") has been discussed or broadcasted publicly. On August 16,

2016, WCHS aired a television news segment about the SEU, wherein the reporter and camera

crew followed the defendant officers around, while they discussed their investigative techniques

and objectives.[2] Defendant Brian Hall was interviewed extensively during the segment. He was

identified by name throughout the segment.

---

[2] https://wchstv.com/news/local/putnam-countys-special-enforcement-unit-makes-hundreds-of-arrests-in-first-year

4





8.     Defendants Rahmati and Lowther were also shown in the segment and identified

as members of the SEU.





9.     In fact, the WCHS segment noted that the SEU purposefully relied on their public

presence as an investigative technique:

> A special enforcement unit in Putnam County is making hundreds of arrests all with the
> help of the community.
>
> The unit has made 316 arrests from in and around Putnam County just since January. The
> four man operation says they can't do it alone.
>
> "The more people that find out we're out here, the more information we're getting,"
> explains Sgt. Brian Hall.
>
> The group does not work undercover, even though they're not in uniform. They're out
> driving the streets of Putnam County daily, checking on tips called in to the agency's
> anonymous drug tip line.
>
> "A lot of times it is people calling in on their neighbors or people in their neighborhood.
> Or they observe a lot of traffic, unusual traffic at different times, late at night," Hall says.[3]

10.    Defendant Lowther, in particular, had a large presence on social media prior to

release of the Elswick footage. He very clearly had not been interested in hiding his identity and

involvement in the SEU.



---

[3] https://wchstv.com/news/local/putnam-countys-special-enforcement-unit-makes-hundreds-of-arrests-in-first-year











11.     It was this public presence that led to additional victims, other than Dustin Elswick, coming forward to Plaintiff's counsel, once the January 15, 2020 video was published to Youtube. The information from one of those victims, including a video of an encounter with the SEU and the defendant officers, was forwarded to investigators. The ultimate investigation report and discipline taken by the sheriff found constitutional and administrative violations by the defendant officers against that victim as well. That would never have been discovered with public release of the footage on Youtube.

12.     In the context of citizens facing government officials engaged in misconduct under color of law, especially where those officials continue to have the ability to wield authority over citizens who are victims of constitutional violations, the use of Youtube (or rather direct exposure to the public) has proven effective at quickly and safely protecting victims and the

public. Shortly after the January 15, 2020 Elswick video, another video[4] was uploaded showing a West Virginia Family Court Judge searching the home of a litigant, threatening him with arrest. That directly and immediately resulted in a judicial disciplinary investigation and prosecution that brought an end to a twenty year practice of constitutional violations by that individual and others, in what the West Virginia Supreme Court of Appeals referred to as an "egregious abuse pf process."[5] Once again, direct exposure to the public via Youtube was transparent and effective. These examples could be reproduced over and over again in the context of police misconduct and accountability.[6] Once viewed by the public, no amount of government corruption can then conceal official misconduct. Case law is replete with examples of the importance of the First Amendment in the police misconduct context.

13.     The only reason post-January 15, 2020 the defendant officers no longer wanted to be identified, or associated with the SEU, is because they were caught on camera engaged in egregious misconduct and constitutional violations of an innocent citizen in their jurisdiction. Rather than legitimate safety concerns, they are obviously embarrassed and ashamed of their actions and want to conceal their misconduct.

14.     Indeed, the internal investigation report issued by the defendant officers' employer concluded that the defendant officers violated the state and federal constitutional rights of the Plaintiff, as well as numerous administrative regulations within their department. The

---

[4] https://youtu.be/_0IDL8ll2x4 (March 10, 2020).

[5] See Gibson v. Goldston, Civil Action No. 5:21-cv-00181 (S.D. W.Va. Jul 13, 2022); In re Goldston, 866 S.E.2d 126 (W. Va. 2021).

[6] See e.g., Sawyer v. Asbury, 861 F.Supp.2d 737 (S.D. W.Va. 2012) ("I was reminded of the Marx Brothers' Duck Soup movie in which the heiress confronts Chico Marx dressed as Groucho and says 'I saw,' and he replies, 'Who are you going to believe, me or your own eyes?'").

entire report, including the statements of the defendant officers, were all marked confidential by

defense counsel and are already subject to a protective order. Being that their goal is to conceal

their misconduct, the defendants are requesting this Court to assist them further in their attempts

at concealment.

15.     Upon information and belief, the Department of Justice became aware that the

FBI agent leaked or disclosed the existence and substance of the subject video to some or all of

the defendant officers, and thereafter served a subpoena on the Putnam County Sheriff's

Department seeking relevant information. Upon information and belief, other than service of the

subpoena to their employer, none of the defendant officers have been informed or advised that

they are under criminal investigation. Nevertheless, counsel for the defendant officers have

expressed concern that the officers were under federal criminal investigation. Accordingly,

Plaintiff's counsel previously agreed multiple times to postpone scheduled and noticed

depositions of those officers, including jointly moving the Court to vacate the scheduling order

multiple times - not just in this action, but the two companion cases as well.

16.     Since the filing of their motion for a protective order, the defendant officers have

made clear that the reason they fear public release of their testimony is because they don't intend

to provide testimony, but rather plead the Fifth Amendment. Of course, the defendant officers

have the right to plead the Fifth Amendment. However, they do not have the right to do so in

secrecy or in the context of sealed testimony.

17.     Plaintiff has the right to obtain the deposition testimony of the defendant officers,

which in the context of allegations of police misconduct, as demonstrated, is best captured on

video, as well as stenographic means. They are not merely private citizens, but police officers

acting (both then and now) under color of law. They cannot be allowed to plead the Fifth Amendment from the shadows.

18.     Defendants' requests to restrain Plaintiff and Plaintiff's counsel is essentially asking for a prior restraint on protected First Amendment rights. The primary case on this issue seems to be <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 29, 104 S. Ct. 2199, 2205 (1984), which has been quoted at length, with 61 citations cautioning its use. This case holds that "the limitation of First Amendment freedoms [must be] no greater than is necessary or essential to the protection of the particular governmental interest involved." <u>Id</u>., 467 U.S. 20, 32, 104 S. Ct. 2199, 2207 (1984).

19.     The governmental interests involved *sub judice* pertain to concern regarding the pretrial disclosure of discovery materials. However, Plaintiff's counsel has already agreed not to publish or disseminate video deposition testimony of the defendant officers until after the jury trial (or other adjudication) in this case, as evidenced by the exhibits to defendants' motion. The legitimate harms alleged to exist with regard to governmental interests held by the defendant officers therefore are not present.

20.     The defendant officers commingle concerns about governmental interests pertaining to pretrial disclosure with post-trial concerns about negative publicity. As Plaintiff's counsel properly responded via email, such post-trial disclosure provisions cannot constitutionally exist outside of some sort of confidentiality provision pursuant to a settlement agreement. Defendants' motion fails even to differentiate between material admitted into evidence in a public trial versus that which is not. <u>Rhinehart</u> supports only a reasonably narrow

13

protective order limited to discovery, rather than the broad post-trial restraint sought by defendants, disguised as a pretrial protective order related to discovery.

21.    "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." Rhinehart., 467 U.S. 20, 33, 104 S. Ct. 2199, 2208 (1984). Thus it would be premature and improper for a Court to issue an order placing restrictions on material, some of which has not yet been created, much less submitted for evidence in public motions, or at public trial - especially in a case of public interest, such as government corruption.

22.    Moreover, the argument that Plaintiff's counsel is somehow responsible for comments posted by third parties on Youtube, is absurd and nonsensical. Plaintiff could just as easily counter the argument by speculating that the defendant officers could have posted the comments themselves. Additionally, one could also post other comments that could demonstrate the opposite, if doing so wasn't irrelevant in the end. The comments singled out by the defendants show very few "likes." Youtube videos with tens of thousands, or hundreds of thousands, of views, will have thousands of individual comments, which will be sorted by Youtube with the most likes towards the top. Those with few, or zero, likes will have been found at the bottom, and therefore mostly unseen by anyone in the first place.

23.    Lastly, regarding concerns that any of this audience is somehow centered around Putnam County, West Virginia, so as to interfere with the defendant officers, or even the trial in this matter, is likewise ignoring the obvious. Whereas the original January 15, 2020 Elswick video went mostly viral in West Virginia, Plaintiff's counsel's Youtube channel now has over

96,000 subscribers, the overwhelming majority of which are outside of the State of West Virginia. For instance, according to Youtube's analytics, the most recent video[7] cited in defendants' motion, out of 174,253 views, only 2,088, or 1.2%, came from the State of West Virginia, with West Virginia being 27th in the list of source of viewers of that video.

WHEREFORE, the Plaintiff respectfully requests that this Court deny the defendant officers' motion for a protective order, and for such other and further relief as this Court deems just and fit, including an award of attorney fees to the Plaintiff.

DUSTIN ELSWICK,
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

---

[7] https://youtu.be/xkb7qXFh4qA

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

DUSTIN ELSWICK, individually,

       Plaintiff,

vs.                                 Civil Action No. :3:21-cv-00468
                                     Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

       Defendants.

### CERTIFICATE OF SERVICE

I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFFS' RESPONSE TO DEFENDANT OFFICERS' MOTION FOR PROTECTIVE

ORDER has been served upon counsel of record by using the CM/ECF System, this the 23rd day

of September, 2022 and addressed as follows:

Sandra Henson Kinney, Esq.
LEWIS GLASSER PLLC
PO Box 1746
Charleston, WV 25326
Counsel for Scott Lowther, Brian Hall
Brian Lockhart and Xerxes Rahmati

Charles R. Bailey, Esq.
Bailey & Wyant, PLLC
PO Box 3710
Charleston, WV 25337
Counsel for Putnam County Commission


/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

17