IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

DUSTIN ELSWICK, individually,

    Plaintiff,

vs.                                              Civil Action No. :3:21-cv-00468
                                                     Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
RYAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

    Defendants.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST INDIVIDUAL DEFENDANT OFFICERS**

    A.     COUNT ONE - Unreasonable Search and Seizure

        **1.     Defendants cannot dispute that they engaged in an unreasonable search and seizure of the Plaintiff's home in violation of the Fourth Amendment.**

On August 21, 2019, the Individual Defendant Police Officers, Brian D. Hall, Xerxes Rahmati, Scott A. Lowther and Ryan Lockhart (hereinafter "Defendant Officers") entered Plaintiff's home in violation of the Fourth Amendment. It is undisputed that they entered and searched Plaintiff's home, under color of law. It is undisputed that they did not have a search warrant. It is undisputed that no exception to the warrant requirement applies to the circumstances. The Defendant Officers were simply caught red-handed, thanks to the existence

of hidden cameras inside Plaintiff's home. Accordingly, there exists no genuine issue of material fact in regards to the liability of the Defendant Officers for violating Plaintiff's Fourth Amendment rights.

The Defendant Officers pushed in an air conditioning unit through Plaintiff's window. (Elswick Deposition at 9:21-24; 10:1).[1] The Defendant Officers then entered Plaintiff's home and searched, including through his clothing and dresser drawers, as captured on video. (Elswick 11:3-6). One of the officers destroyed some of the ashes of Plaintiff's deceased friend, Justin Bradford, which was located in a glass jar in his bedroom. (Elswick 12:12-24; 13:1-16).

The officers were present at Plaintiff's home that day to serve an eviction petition on him, due to late rent payments. *See* Exhibit 1 to Elswick Deposition. (Elswick 35:21-24; 36:1-7). The officers were not in possession of an eviction *order*. Nor was an eviction order subsequently issued by the court. (Elswick 36:9-18). Rather, they possessed only initial process documents. Thereafter, Plaintiff contacted his landlord after the subject incident and was told by the landlord that he had nothing to do with the Defendant Officers searching Plaintiff's home. (Elswick 37:3-10).

When Plaintiff returned home that day he found his driveway gate, which had been left closed and locked, open, with the cut-lock lying on the ground right underneath the gate. (Elswick 40:10-24; 41:1-8). Entering his home, he observed that "[i]t was a total mess." It appeared as if someone had "broken in my house and went through my stuff," Plaintiff said. (Elswick 37:16-22). The officers physically moved and damaged his air conditioner. (Elswick 41:21-23). Both exterior doors had been left open by the officers following their search. (Elswick

---

[1] The full deposition transcript of Dustin Elswick is attached hereto as Exhibit 1.

38:8-13). Plaintiff found two of his firearms "laid out" in his kitchen, with "one of [his] stove and one on . . . a little mini fridge." Whereas prior to the Defendant Officers' arrival, his firearms had been located in the gun cabinet. (Elswick 39:5-20).

Plaintiff discovered that the Defendant Officers had physically removed his friend's cremated remains from where he had left them. (Elswick 41:15-17). Plaintiff found two discarded field drug test kits - one in his yard and another on the side of the creek on the ground. Plaintiff discovered to his horror that some of his friend's cremated remains were inside the test kits. He could see "bits of bone" which he discovered had been removed from the glass jar containing the remains, which he found in his kitchen. (Elswick 43:11-23). Plaintiff was never charged with any crime related to the Defendant Officers searching his home on April 18, 2019. (Elswick 44:4-7).

Most troubling of all, Plaintiff discovered that the Defendant Officers had disabled the wires to his exterior surveillance camera. (Elswick 14:10-24; 41:11-14). The video footage from this camera shows the moment the camera was disabled, showing Defendant Lowther walking across the footbridge across the creek. Footage from Plaintiff's interior hidden surveillance cameras showed the Defendant Officers searching inside Plaintiff's home.[2]

None of the Defendant Officers were able to provide justification for their search of Plaintiff's home. Defendant Brian Hall, the supervisor for defendants Lowther and Rahmati, when placed under oath at his deposition in this matter, pled the Fifth Amendment **113** times.[3] Defendant Ryan Lockhart, supervisor for all other defendant officers, when placed under oath at

---

[2] *See* video footage from Plaintiff's surveillance cameras, being mailed to the Clerk as Exhibit 2.

[3] The full video deposition transcript of Brian D. Hall is attached hereto as Exhibit 3. The accompanying video footage file, as provided by the videographer, is being mailed to the Clerk on a thumb-drive.

his deposition in this matter, pled the Fifth Amendment **39** times.[4] Defendant Xerxes Rahmati, when placed under oath at his deposition in this matter, pled the Fifth Amendment **111** times.[5] Defendant Scott Lowther, when placed under oath at his deposition, pled the Fifth Amendment **77** times.[6]

Amendment IV of the U.S. Constitution provides that "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. Article III, Section 6 of the West Virginia Constitution provides for the same protections, almost verbatim. A warrantless search is " per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted).

It cannot be disputed that police officers intruding into a citizen's home in order to search for evidence of suspected drug possession, use, or delivery, is a search under the Fourth Amendment, and therefore subject to the warrant requirement. An individual's home is highly protected under the Fourth Amendment. When searches and seizures take place in an individual's home, there is no reasonableness analysis, since such actions are a "search" *per se* under the Fourth Amendment. As such, the only analysis applicable is whether a warrant was

---

[4] The full video deposition transcript of Ryan Lockhart is attached hereto as Exhibit 4. The accompanying video footage file, as provided by the videographer, is being mailed to the Clerk on a thumb-drive.

[5] The full video deposition transcript of Xerxes Rahmati is attached hereto as Exhibit 5. The accompanying video footage file, as provided by the videographer, is being mailed to the Clerk on a thumb-drive.

[6] The full video deposition transcript of Scott Lowther is attached hereto as Exhibit 6. The accompanying video footage file, as provided by the videographer, is being mailed to the Clerk on a thumb-drive.

obtained, and if not, whether an exception applies. Katz, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted).

### 2. Defendants are not entitled to qualified immunity.

It is a fundamental tenet of the Fourth Amendment that warrantless searches are *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The text of the Fourth Amendment provides protection from unreasonable searches and seizures of "persons, houses, papers, and effects." U.S. Cont. amend. IV. As the Supreme Court recognized, "[t]he text of the Fourth Amendment reflects its close connection to property." United States v. Jones, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012).

The Supreme Court has held that a civil case involving the issue of qualified immunity has the "the same standard of objective reasonableness" as applied in a good faith inquiry in a criminal suppression hearing. Malley v. Briggs, 475 U.S. 335, 344 (1986); *see also* Groh v. Ramirez, 540 U.S. 551, 565 n. 8 (2004); Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms, 452 F.3d 433, 448 (6th Cir. 2006) ("the Leon good-faith inquiry and the qualified immunity inquiry are one and the same").

Based on this rationale, the Supreme Court created a "good faith" exception to the exclusionary rule, which applies when law enforcement officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful." United States v. Davis, 131 S.Ct. 2419, 2427 (11th Cir. 2010) (*quoting* United States v. Leon, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The Court has applied the good faith exception to evidence obtained by law enforcement officers who acted in objectively reasonable reliance upon a search warrant

issued by a neutral magistrate, but where the warrant was ultimately found to be unsupported by probable cause. *See* Leon, 468 U.S. at 909, 104 S.Ct. 3430. The Court also applied this exception when officers acted in objective reliance upon a state statute ultimately found to violate the Fourth Amendment. *See* Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). And in Davis, the Court further articulated this exception applies "when the police conduct a search in objectively reasonable reliance on binding appellate precedent." 131 S.Ct. at 2427.

None of these factual scenarios are present here. There was no search warrant, defective or otherwise. To the contrary, each of the Defendant Officers received discipline from their employer as a consequence of their actions in illegally searching Plaintiff's home. Moreover, as discussed *supra*, the Defendant Officers effectively disclaim the ability to argue "good faith reliance" when they chose to comprehensively plead the Fifth Amendment. As Chief Deputy Eric S. Hayzlett explained in a February 20, 2020 letter to Sheriff Steve Deweese, the Defendant Officers had no legitimate excuse, other than to claim ignorance and incompetence:

> I found Deputy Lowther to be the only member that was completely forthright and cooperative. The other three members appear to be attempting to minimize their actions at best and do not appear to me to be completely transparent in their answers. These members have all committed infractions under our policy that support termination and to be honest termination is probable what would be most appropriate to protect this department and those citizens we serve….
>
> In regards to Deputy Lowther I think that his involvement is minimal, he was working under the direction of his supervisors, and that he was not a party to the violation of Mr. Elswick's civil rights. I feel that Cpl. Rahmati and Sgt. Hall are equal in their blatant disregard for Mr. Elswick's Constitutional protections against unlawful search and seizure in that none of the paperwork they had, or even none of the paperwork they thought they had would have given them the ability to conduct the search that was conducted….

(Hall Deposition, Exhibit 32).

**CONCLUSION**

It is an undisputed fact that Plaintiff's home was searched in violation of the Fourth Amendment. There is no law applicable to a police officer, much less a drug unit officer, more fundamental than the requirement of a search warrant to search a suspect's home. Moreover, there are no facts in dispute that could indicate to any reasonable police officer that justification existed to search Plaintiff's home on August 21, 2019. Therefore, the Defendant Officers have no claim to qualified immunity.

WHEREFORE, the plaintiff respectfully requests the Court to GRANT his motion and ORDER that summary judgment be entered in his favor on Count One of the complaint.

DUSTIN ELSWICK,
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

DUSTIN ELSWICK, individually,

       Plaintiff,

vs.                                   Civil Action No. :3:21-cv-00468
                                        Honorable Robert C. Chambers

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

       Defendants.

## **CERTIFICATE OF SERVICE**

       I, John H. Bryan, do hereby certify that I have delivered a true copy of the foregoing

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST INDIVIDUAL

DEFENDANT OFFICERS has been served upon counsel of record by using the CM/ECF

System, this the 7th day of December, 2022 and addressed as follows:

Sandra Henson Kinney, Esq.
LEWIS GLASSER PLLC
PO Box 1746
Charleston, WV 25326
Counsel for Scott Lowther, Brian Hall
Brian Lockhart and Xerxes Rahmati

Charles R. Bailey, Esq.
Bailey & Wyant, PLLC
PO Box 3710
Charleston, WV 25337
Counsel for Putnam County Commission

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com